HUGH W. COLLENDER, Respondent, v. GEORGE E. PHELAN et al., Executors, etc., Appellants.

In an action for an accounting between a surviving partner and the representatives of a deceased partner, the former is entitled to credit for all sums paid by him to the latter, after their appointment, out of funds collected by him as surviving partner.

In the case upon appeal, in such an action, it appeared that plaintiff, the surviving partner, testified without objection to payments so made; in a subsequent part of the case it was stated that it was understood plaintiff should produce vouchers; it did not appear what vouchers were wanting, or that there was any application to strike out the testimony in default of such production, nor was there any objection, ruling or exception on the subject of the necessity of the vouchers. *Held,* that this question not having been raised on the trial could not be raised on appeal.

Plaintiff, in making payments of the indebtedness of the firm, advanced moneys from time to time from his own funds, in excess of the amount in his hands as surviving partner. *Held,* that he was entitled to interest on such advances.

The findings of the referee did not show upon what particular payments interest was allowed. *Held,* that it could not be claimed that too much interest was allowed, as there was no specific finding disclosing any such error.·

To reverse the conclusions of law of a referee it must appear from the facts found that they are erroneous.

At the time of the death of P., the deceased partner, the firm had contracts for the manufacture and sale of articles under patents belonging to the firm or the partners jointly, which contracts were for a period extending beyond the time of such death. It appeared that large profits would have been realized by the firm, had it continued and the other parties had remained solvent, in carrying out said contracts; it did not appear, however, that they had any value aside from the value of the use of the patents. Defendants sold and assigned to plaintiff the interest of their testator at the time of his death in the stock, fixtures, etc., of the firm, and also in said letters patent, and in the lease of the warehouse occupied by the firm, plaintiff agreeing to assume and pay all salaries due employes, etc., accruing subsequent to the death of P. In none of the writings was any reference made to the outstanding contracts, *held,* that the transfers, etc., afforded a strong inference that the intent of the parties was that plaintiff should continue the former business on his own sole account, and that no benefit was intended to be reserved to defendants from manufactures under said contracts; and that a finding that defendants were not entitled to any credit or allowance on account of the contracts was justified.

(Argued November 17, 1879; decided January 13, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

*John Joroloman,* for appellants. The referee erred in allowing plaintiff interest on the excess of advances. (Parsons on Part., 229, note Y; id., 443, 444.) A surviving partner is not entitled to commissions in settling up the co-partnership. (Collyer on Part., § 199, note 3; Story on Part., § 331; Parsons on Part., 229, 330, 443, 444; *Johnson* v. *Hartshorne,* 52 N. Y., 180.)

*M. Nolan,* for respondent. The advances made by plaintiff were a proper charge against the estate of defendants' testator. (2 Greenl. Evi., § 518.) As neither statute nor rule has provided for procedure in an action for accounting, the old practice prevails. (1 Barb. Chy. Pr., 506; *Wiggins* v. *Gans,* 4 Sandf. 546; *Palmer* v. *Palmer,* 13 How. Pr., 364; 2 Daniel's Chy. Pr., 1221.) Plaintiff having agreed with defendants to assume the whole business after October 7, 1871, and to exonerate them from expenses from that date, they are not entitled after that time to share in the profits. (Phillmore's Maxims, 138; New Civil Code, § 1953; 3 Kent's Com., 28, 29.) Frauds must be pleaded specially, as well in accounts as in other actions. (*Wilder* v. *Adams,* 2 Woodb. & Minot, 329 ; Bliss' Code, 360, note *i.*)

RAPALLO, J. This action was for an accounting between the plaintiff, as surviving partner of the late firm of Phelan & Collender, consisting of the plaintiff and Michael Phelan, deceased, and the defendants as executors and executrix of the deceased partner. The questions before us arise upon exceptions to the report of the referee settling the account.

The first exception is to the allowance to the plaintiff of an item of $3,544.12, which was the aggregate of various small sums charged by plaintiff in the statement of his accounts presented to the referee, as payments made by plaintiff for account of the estate of M. Phelan, deceased. It is claimed by the appellants that these payments were not proven. The referee states in his report that the testimony was uncontradicted that such payments were made at the request of the defendants. On reference to the testimony we find that the plaintiff so testified. It is further objected that the plaintiff failed to produce vouchers therefor. We find no exception in the case which raises the point that the production of such vouchers was necessary. The plaintiff was allowed without objection to testify to the fact of the payments. It is stated in a subsequent part of the case that it was understood that the plaintiff would produce vouchers, such as had not already been produced, for these payments, but it does not appear that the matter was followed up, nor what vouchers were wanting, nor that there was any application to strike out the testimony in default of the production of vouchers, nor any objection, ruling or exception on the subject of the necessity of the vouchers. The question not having been raised on the trial cannot be raised on appeal. The allowance of the item cannot be said to be entirely without proof, and therefore the finding of the referee cannot be held erroneous in law.

It is further objected that the testimony shows that these payments had no connection with the partnership matters, but were individual transactions between the plaintiff and the executors, after the death of Phelan. This would not, we think, deprive the plaintiff of the right to credit for the payments. The plaintiff was entitled to credit for all sums paid the executors out of the funds collected by him as surviving partner, as they were the proper and only parties who could receive them as the representatives of Phelan. It is claimed that the testimony shows that the payments were made to the executors for their individual use. The referee has not

so found, and the testimony on the point is ambiguous. The plaintiff first stated that they were made at the request of the defendants for the estate of Mr. Phelan, and then gave an affirmative answer to the interrogative statement of defendants' counsel, "That is for their individual use — the executors?" The referee may well have construed this answer as not intended to convey that the payments were not made to or for the executors as such. No sufficient facts or exceptions appear to justify us in reversing the allowance of this item by the referee.

The second, third and fourth exceptions relate to matters of fact. The findings of the referee are not shown to be unsupported by any evidence, and no question of law arises upon these exceptions. The fifth and sixth exceptions relate to the allowance of payments for rent and indebtedness of the Columbia billiard room and the Montreal billiard room. Although these payments appear to have been made and charged after the death of the testator, which was October 7, 1871, the referee finds that the rents and indebtedness accrued before that time. The testimony of the plaintiff was that he charged the estate with the rent up to Mr. Phelan's death, and charged all the rest to himself subsequently. The finding was not without evidence. The seventh exception is to the allowance to the plaintiff of interest on his advances. The referee finds that the plaintiff, in making payments of the indebtedness of the firm, advanced moneys from time to time from his own funds, in excess of the amount in his hands as surviving partner, and the referee allowed interest on such advances. In this we find no error. (*Dougherty* v. *Van Nostrand,* 1 Hoff. Chy. Rep., 68, 69.) The defendant claims that there is an error in the amount of interest allowed, but there is no specific finding which discloses any such error. The appellant seeks to impose upon this court, virtually, the task of rehearing the case as referees, and reviewing the testimony and the facts, and stating an account between the parties. This cannot be done. To review the conclusions of law of the referee, it must appear

from facts found that they are erroneous. The testimony cannot be resorted to for that purpose. The findings of fact do not show upon what particular payments interest was allowed, and it does not appear from the findings that interest was allowed on items excluded and payments disallowed, as claimed in the appellants points. The eighth exception is to the finding of fact that there was no proof before the referee from which he could determine the value of the contracts for billiard cushions, referred to in the finding. This exception may be considered in connection with the eleventh, which is to the conclusion of law that the defendants are not entitled to any credit or allowance for or on account of any of the contracts for billiard cushions.

The facts found in respect to these contracts are, that at the time of the death of Michael Phelan the firm had contracts with different parties for the manufacture and sale of billiard table cushions, under patents issued by the United States, which belonged to Phelan & Collender jointly, or to the firm, which contracts by their terms extended for periods beyond the death of Phelan, and that if the firm had continued, and the parties with whom the contracts were made had remained solvent, and the firm had continued the owners of the patents, the plaintiff and Phelan would have realized large profits in carrying on said contracts.

It also appears from the findings that Phelan died on the 7th of October, 1871, and that on the 17th of November, 1871, the defendants sold and transferred to the plaintiff for $40,000, Phelan's half of all the stock which belonged to the firm at the time of Phelan's death, and of all fixtures, furniture, etc., according to a schedule annexed to the bill of sale. In that schedule was a valuation of the articles enumerated therein, composing the stock of the firm, which valuation amounted to $72,013.78, to which was added cash in bank, October 7, 1871, $7,331.84, and at the foot was added a memorandum signed by the parties as follows: "Upon settlement it was agreed that all the above, estimated at

$80,000, for undivided half of which Mr. Collender agreed to pay $40,000."

No reference was made in the bill of sale or schedule, to the contracts in question.

By an instrument dated December 30, 1871, the defendants, in consideration of $10,000, assigned and transferred to the plaintiff all the interest which Michael Phelan had in all letters-patent owned by Phelan & Collender jointly, or by the firm. It is found that this assignment included the patents under which the cushions before mentioned were to be manufactured, and the finding is not excepted to.

It further appeared in evidence that in November, 1871, the defendants assigned to the plaintiff the lease of the warehouse of the late firm, and by a further instrument dated in the same month, and reciting the sale to the plaintiff of the share of the deceased partner in all the stock of said firm, the plaintiff agreed with the defendants that he would individually assume and pay all salaries due any servants, employes or workmen of whatsoever nature, employed by the late firm, accruing subsequent to October 7, 1871, the date of Phelan's death.

In none of these instruments is there any reference to the outstanding contracts for the manufacture of cushions. But the facts of the sale to the plaintiff of all the interest of the deceased partner in the lease of the warehouse and in the stock of the firm and in the patents which were necessary to the performance of these contracts, and the assumption by the plaintiff of all the wages of employes and workmen, afford a strong inference that the intent of the parties was that the plaintiff should continue the former business on his own sole account, and that no benefit was intended to be reserved to the defendants from the manufacture of cushions under the pending contracts.

If this portion of the business was to be continued for the joint benefit of the estate and the surviving partner, it is natural to suppose that some provision would have been made respecting it, in the various agreements for the sale of

stock and patents, and the assumption by the survivor of all expenses for salaries and labor accruing after the date of Phelan's death.   It would not be reasonable to suppose that it was the intention of the parties that the plaintiff should go on and complete these contracts at his own expense and risk, and devote his time and services gratuitously thereto, and also give to the executors the benefit of the patents which he had purchased of them and for which he paid a large consideration.   All these matters would naturally have been the subject of some agreement, if the intention had been that the executors should remain interested in the contracts.   But on this point we are not left merely to conjecture.   There are facts and testimony to guide us, which, although not incorporated in the findings, may be resorted to to sustain the judgment.   These contracts were for the manufacture of a patented article.   Apart from the right to the patents the contracts were of no value, for they could not be performed. The defendants having for a large consideration sold all their interest in the patents to the plaintiff, he would, in case he were bound to give the representatives of his deceased partner the benefit of the contracts, have been entitled to an allowance, not only for his expenses, but for the use of his patents, and although it appears that the plaintiff derived profits from the performance of the contracts, there is no evidence to indicate what their value would have been, or that they would have had any value, after making these allowances, nor was there any agreement as to the use of the patents in the performance of the contracts.   The plaintiff testified that the understanding was that he took all the business from the seventh of October, assumed all the debts and had all the contracts.   This testimony was objected to, but it was not stricken out nor asked to be stricken out, nor are we referred to any testimony contradicting it.   On the contrary George E. Phelan, one of the executors, testifies that the plaintiff was to assume everything from the date of his father's death, and in reference to the assignment of the patents and trade marks, he testified that the arrangement as to the time the

agreement should go into operation was, that everything should date from his father's death, the same as the stock. If the performance of the contracts had resulted in a loss, it is very clear that the defendants would not, under the arrangements made with the plaintiff, have deemed themselves chargeable with any portion of such loss, nor of any damages for which the plaintiff might become liable under the contracts.

We think the special circumstances of this case, in connection with the dealings between the plaintiff and the executors, sufficient to sustain the conclusions of the referee, without infringing upon the general principles upon which a surviving partner is held accountable for all profits arising from the use of the firm property.

No other exceptions are referred to in the plaintiffs points.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.