SCHERMERHORN *et al. v.* BREWER.

(*Supreme Court, General Term, Fourth Department.* February, 1892.)

1. PARTNERSHIP—ACCOUNTING—SET-OFF.

In an action by administrators against the surviving partner of intestate for an accounting, defendant claimed the right to offset accounts for goods furnished by him to the heirs of the intestate after the dissolution of the firm, under an agreement with one of the three administrators that any goods sold and delivered to the heirs at law of intestate should apply on the interest of intestate's estate in the partnership assets. *Held*, that the referee did not err in rejecting the claim, as the administrator had no authority either to compel the heirs to apply their accounts with defendant on their respective shares in the estate, or to bind the estate to receive such accounts as a part of its interest in the partnership assets.

2. SAME—UNCOLLECTED ACCOUNTS.

In such case the accounts of defendant with the heirs of the intestate should be stricken from the referee's list of the uncollected accounts of the firm, as they were not allowed as offsets, and belonged to defendant individually.

3. SAME—APPEAL.

Where, in such case, at the request of defendant, the referee found that a certain amount had been expended by defendant for wages of employes, and allowed such amount as a part of the reasonable expenses of closing the business, defendant cannot claim, on appeal, that the referee erred in not allowing a larger sum, which, by undisputed evidence, was shown to have been paid by defendant as wages to employes.

Appeal from judgment on report of referee.

Action by James R. Schermerhorn and Abram M. Schermerhorn, as surviving administrators of James A. Schermerhorn, deceased, against Edward H. Brewer for an accounting. From a judgment for plaintiffs entered on the report of a referee, defendant appeals. Modified.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*B. A. Benedict,* for appellant. *Franklin Pierce,* for respondents.

MERWIN, J. On the 17th March, 1877, the defendant and James A. Schermerhorn, plaintiffs' intestate, entered into a copartnership, under the firm name of Brewer & Schermerhorn, in the business of making and selling harnesses, trunks, etc., at Cortland, N. Y. Each contributed in money or goods the sum of $2,484.27. This partnership continued until the death of James A. Schermerhorn, on the 30th December, 1879. On the 15th November, 1880, the plaintiffs and one Charles H. Parker were duly appointed administrators of the estate of the deceased. Parker died in October, 1887. After the death of James A. Schermerhorn the defendant continued in possession of the part-

nership property, and undertook the closing up of the business. This action was brought in August, 1888, for an accounting and settlement in regard to the partnership dealings and property. The referee, to whom the case was referred to hear, try, and determine, found that there was due the plaintiffs from the defendant, on account of the partnership matters, the sum of $912.22, and that there was unsold merchandise on hand to the amount, as originally inventoried, of $346.50, but of little value in fact, and also uncollected accounts to the amount of $758.27. Judgment was ordered in favor of the plaintiffs against the defendant for $912.22, and for the costs, and for the disposition of the unsold goods and uncollected accounts through a receiver, if the parties could not agree as to their sale or division.

1. The defendant claims that the referee erred in rejecting the claims of the defendant on accounts for goods furnished by him to the Schermerhorn heirs after the dissolution of the firm. In his answer the defendant alleged that, for several years after the death of James A. Schermerhorn, the plaintiffs and other heirs of Schermerhorn "purchased of this defendant, from time to time, goods and merchandise, with the understanding that such purchases were to be applied upon any balance that might be due to the estate of said James A. Schermerhorn from the assets and property of the said firm, after the payment of the firm debts; and such purchases, with interest, amount to about $350; and which amount he will ask to have allowed him on this accounting." The finding of the referee on this subject was as follows: "That said James A. Schermerhorn left, him surviving, the following named children and heirs at law, to-wit, James R. Schermerhorn, Abram M. Schermerhorn, Susan M. Schermerhorn, and Linda Schermerhorn. That Susan M. is now the wife of James M. Milne, and Linda is the wife of B. E. Miller. That after the death of James A. Schermerhorn it was agreed between the defendant and Charles Parker, one of the administrators of said James A. Schermerhorn, that any goods and merchandise which should be sold and delivered to the above-mentioned heirs at law by the defendant should apply upon the interest of the estate of James A. Schermerhorn in the partnership assets of the late firm. That, in pursuance of such agreement, the defendant sold and delivered to James R. Schermerhorn goods to the amount of $17.32, including interest; to James M. Milne, the husband of Susan M. Milne, goods to the amount of $17.14, including interest; to Mrs. Burnett E. Miller goods to the amount of $89.24, including interest; to Abram M. Schermerhorn goods to the amount of $201.57, including interest; to James A. Schermerhorn goods to the amount of $11.01, including interest. That said goods were so sold and delivered by the defendant, as such surviving partner and legal owner thereof, at different times between December 30, 1879, and the commencement of this action, and the total amount of such sales is $336.28; but I find as a fact in this case that said Parker, as administrator or otherwise, had no right, power, or authority to make the contract aforesaid with the defendant. That such agreement was not founded upon any contract or obligation of the intestate, James A. Schermerhorn, and created no liability against the estate he represented, and, as matter of law, we hold the said agreement or arrangement to be null and void as against the plaintiffs, and that said account, amounting to $336.28, should not be offset or allowed against the plaintiffs in this action."

The defendant at the trial claimed that the plaintiff Abram M. Schermerhorn was a party to the agreement between the defendant and Parker, but this the plaintiff Abram denied, and we must take the fact as found by the referee. The evidence of the defendant leaves it in doubt whether this agreement was not made by Parker before his appointment as administrator. Assume, however, that he was administrator when the agreement was made, was the estate bound so that the agreement became obligatory upon the plaintiffs as administrators? Parker, as administrator, had no right to say that the heirs must apply their accounts with the defendant upon any interest or

share they might have in the estate, nor had he any right to bind the estate to take its pay in that way for anything that might be due from the defendant. *Schmittler* v. *Simon*, 101 N. Y. 557, 5 N. E. Rep. 452. The defendant claims that the plaintiffs are estopped from denying the validity of the agreement. It may be that Parker would be, but it is not found that the plaintiffs knew anything about it, or that the heirs assented to it. I do not think the plaintiffs are estopped. The defendant invokes the doctrine of equitable set-off. It is not claimed that the accounts are a legal set-off. *Wakeman* v. *Everett*, 41 Hun, 278. They are separate debts against the plaintiffs and others individually, while plaintiffs' claim is a joint one, in their capacity as administrators. In *Dale* v. *Cooke*, 4 Johns. Ch. 11, Chancellor KENT says that, to authorize a set-off, the debt must be mutual, and due to and from the same persons in the same capacity, and that joint and separate debts cannot be set off against each other in equity any more than at law. See 2 White & T. Lead. Cas. Eq. (4th Amer. Ed.) p. 1342. But the defendant suggests that the statute of limitations may be a good defense to these accounts as against the individual parties, and that, therefore, if not allowed here he may lose them. This ground for equitable relief is not set up in the answer, (*Irving* v. *De Kay*, 10 Paige, 319,) and is not presented in any of the defendant's requests for findings. When this action was commenced, according to the face of the accounts, a large portion thereof would not be affected by the statute. Payments within six years seem to have been made on the two larger accounts. The plaintiffs do not appear to have done anything to prevent the defendant from collecting the accounts. We are cited to no authority that would justify us in allowing the defendant's claim upon this ground. These accounts belonged to the defendant individually, and, for aught that appears, had no connection with the partnership funds or property. They cannot be deemed payments by the defendant out of partnership funds, within the rule suggested in *Collender* v. *Phelan*, 79 N. Y. 368; nor for the benefit of the estate, as the next of kin could not, without their consent, be compelled to take payment in that way, and as in this action there was no opportunity to ascertain what, if anything, would be finally coming to the next of kin. One of the accounts is against James A. Schermerhorn for $7.15, besides interest. This probably means the intestate; but all the items of the account, as shown by the exhibit in evidence, were furnished long after his decease, and no explanation is given that would indicate that it was a proper charge against the estate, or proper to be allowed as an offset to plaintiffs' claim. It follows that the defendant fails to establish any error of the referee in disallowing the accounts referred to.

2. The firm rented the store in which it did business of one Henry Brewer, at the annual rent of $450. The defendant requested the referee to find that on the 1st day of January, 1880, the firm was indebted to Henry Brewer in the sum of $425.78, and that this was, subsequently and before the commencement of this action, paid by the defendant. This the referee declined to do, upon the ground, as appears from the entry of the referee, that the ledger of the firm at certain pages showed that the rent of 1879 was paid prior to January 1, 1880. This was a mistake. The ledger at the pages referred to does not show such payment. This seems to be conceded by the plaintiffs' counsel, but he claims that the evidence does not show that the defendant ever paid it, so as to be entitled to credit for it on the accounting. The case shows that upon the trial an exhibit (No. 13) was produced by the defendant, and read in evidence. This has on it an item, "Henry Brewer, 425.78." In regard to this exhibit the defendant testified as follows: "That is an exhibit of payments made by me, after Mr. Schermerhorn's death, of personal accounts, and all indebtedness against the firm which I have paid. Those are itemized largely, and I believe they are correct." In the cross-examination of the defendant, or during the progress of the trial, this payment

does not seem to have been disputed. The relations between the defendant and Henry Brewer rendered the payment probable. We think that this item should have been allowed and found as requested, and that defendant was entitled to credit for it.

3. The defendant requested the referee to find "that from and after December 30, 1879, the defendant employed a clerk to assist in the sale of the goods of the late firm, and also workmen to make harnesses and other like articles from the stock on hand; that the expenses therefor amounted to $568, which was paid by defendant." This the referee found, and afterwards allowed the defendant that sum as a part of the reasonable expenses of closing the business. The defendant now claims that the undisputed evidence was that the amount paid by defendant for wages for the purposes stated in the request was $656.48, and that the referee erred in not making it the latter sum. There was evidence that the sums paid out for wages from January 1, 1880, to September 1, 1881, was $656.48. But the referee had the right to take the figure that the defendant presented in his request, and cannot be charged with error in finding as requested. Besides, it was for the referee to say what was the reasonable amount, and we assume that the amount, as named and found, was what was deemed to be reasonable.

4. The defendant further claims that the referee erred in finding that the amount of accounts against third parties, January 1, 1880, excluding the accounts of the Schermerhorn heirs, was the sum of $1,147.12. The defendant claims, although it is not so found, that to obtain these figures the referee took the amount of the uncollected accounts, which were conceded to be $421.99, and added thereto the amount of collections since January 1, 1880, as indicated by an exhibit put in evidence by defendant, called "Collections; Brewer & Schermerhorn account since Jany. 1, 1880." These, as indicated by the exhibit, were $725.13, making, with the uncollected accounts, $1,147.12. The claim of defendant is that the amount of $725.13, as indicated by the exhibit, is made up largely from collections of accounts arising from sales of goods after the dissolution, and that such accounts should not be considered in determining the amount to be charged to the defendant, as he is charged with the goods as they were at the dissolution. Of course, it follows that, if defendant is charged with the goods as they were at the dissolution, he should not be charged with accounts from sales made since. The books of the firm, as continued by the defendant, are exhibits in the case, and are handed up for examination. A comparison of the items in the exhibit of collections above referred to with the entries in the firm books shows that about $118 of the $725 arise from sales since the dissolution. The plaintiffs, however, claim that the amount in fact of the accounts at the time of the dissolution exceeded the sum of $1,147.12, and that, deducting the conceded amount of uncollected accounts, the amount properly chargeable to the defendant as collected accounts exceeds the amount charged the defendant by the referee. The plaintiffs' counsel produces, as part of his argument, a schedule, purporting to be made up from the firm books, which indicates that the outstanding accounts at the time of the dissolution were $1,220. An examination of the books in reference to this schedule shows that the accounts on January 1, 1880, in fact exceeded the amount fixed by the referee. The defendant has therefore no occasion to complain.

5. Provision was made in the judgment for a disposition of the uncollected accounts. In the list of these the referee included the accounts of the Schermerhorn heirs, so called, at $336.28. The defendant claims that these accounts belong to him individually, and should not be included with those of the firm. In this the defendant is correct. These accounts do not belong to the firm. They were claimed as offsets, but, as that claim is not allowed, they should be stricken from the list of uncollected accounts, leaving the amount $421.99.

6. The referee, in stating the account between the partners, found that the defendant drew out of the business of the partnership the sum of $1,715.42, and the plaintiffs' intestate the sum of $1,117.72. The latter sum is not found fault with, but the defendant claims that the former is too large. Still these figures are taken from the evidence of the defendant himself, and his evidence authorizes the inference that that amount was stated by him as what he had drawn out in cash and merchandise prior to January, 1880. He also testified that he had drawn out "something like $400 more than Mr. Schermerhorn." He afterwards testified that Mr. Schermerhorn drew out $1,454.59, including the bills of the Schermerhorn heirs, so called. Deducting those which the referee disallowed, it left the sum of $1,118.31, which is substantially what the referee found. The attention of the referee was not specifically called to the amounts drawn out by the parties by any request to find on that particular subject. Nor does the counsel for defendant demonstrate that the figures taken by the referee are erroneous, or that the defendant was mistaken in his evidence. No error is therefore apparent upon this subject. The evidence was sufficient to sustain the referee's finding.

7. The referee charged the defendant with collections on accounts to the amount of $725.13. As the accounts at the time of the dissolution exceeded $1,147.12, and as it was conceded that there remained of uncollected accounts only the sum of $421.99, the referee had the right to infer that the balance had been collected by the defendant. The defendant fails to make it appear that he has been injured in this regard.

8. A point is made by the defendant as to the allowance to him of interest on some advances he made, but this, upon the argument, was not urged. The referee did not allow the plaintiffs any interest on the balance found due them. The question of costs was in the discretion of the referee, and no sufficient reason is apparent for us to interfere upon that subject.

No other claims of error are presented.

It follows that the judgment should be modified by crediting the defendant in the account the item of $425.78, above referred to, or, which would produce the same result, deduct one-half thereof from the amount found due to the plaintiffs from the defendant; thus reducing the recovery from $912.22 to $699.33. The judgment should also be modified by striking out from the list of uncollected accounts the Schermerhorn heirs' accounts, thus reducing the uncollected accounts from $758.27 to $421.99. As so modified, the judgment should be affirmed. A majority of the court are of the opinion that the appellant should have the costs of the appeal.

Judgment modified by reducing the recovery, as stated in the judgment, from the sum of $912.22 to the sum of $699.33, and by striking from the list of uncollected accounts the Schermerhorn heirs' accounts, amounting to $336.28, and, as modified, judgment affirmed, with costs of this appeal to the appellant. All concur.