[No. 1481.]

## G. N. FOLSOM, RESPONDENT, *v.* S. H. MARLETTE, APPELLANT.

PARTNERSHIP—ACCOUNTING—BOOKKEEPING—LIABILITY OF PARTNER.—On an
accounting between partners the mere fact that certain checks
drawn by one of them were never entered on the books, does not
charge him with the amount, where the firm had an employee whose
duty it was to correctly keep the books and accounts.   One member
of a firm cannot be charged with mistakes which may have been
made in bookkeeping.

IDEM—LIABILITY OF PARTNERS—CONFLICT OF EVIDENCE—PRESUMPTION.—
Appellant contends that respondent, in violation of an agreement
between them as partners, sold goods to a certain party without a
guarantee of a third party for the payment of the account, and that
thereby the firm sustained a loss, which loss the respondent should
be held liable for:   *Held,* that the testimony being directly conflict-
ing, the district judge, by disallowing the claim, must impliedly
have found in favor of respondent upon this point.

IDEM—ADVANCEMENT FOR BENEFIT OF FIRM—INTEREST.—A trading firm
had no capital, and had been in the habit of paying interest at its
banker's on overdrafts for a long time.   After it had discontinued
business, and just before dissolution, one of the partners paid a
certain amount to the firm's creditors.   On an accounting between
the partners, it did not appear that the money was not paid with
the knowledge and acquiescence of the other member:   *Held,* that
it was an advancement for the benefit of the firm, and hence drew
interest.

IDEM—UNDER STIPULATION, RIGHT TO SHOW TRUE VALUE OF PROPERTY
CHARGED.—It appeared that respondent, with the consent of appellant, had appropriated firm property, and charged himself for it upon the books of the firm. It was stipulated that a transcript of the books should be treated as correct, except as to those items designated "disputed," and such charge was disputed by appellant as being too small: *Held,* that by reason of appellant disputing the value of the items, the question of the value of the property was reopened, and respondent had the same right to establish a lesser value that appellant had to establish a greater.

IDEM—PROPERTY APPROPRIATED BY ONE MEMBER OF FIRM—INTEREST.—In an accounting between partners, where it is shown that one of the firm, prior to the dissolution of the partnership, is allowed to take firm property, the other partner is allowed interest upon the value of the property from the date of its appropriation by the other.

IDEM—COMPENSATION FOR SERVICES OF PARTNER.—One partner cannot charge the other compensation for his services, without special agreement.

APPEAL from the District Court of the State of Nevada, Ormsby county; *C. E. Mack,* District Judge:

Suit by G. N. Folsom against S. H. Marlette. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Modified and affirmed. .

The facts sufficiently appear in the opinion.

*Robt. M. Clarke* and *T. W. Healey,* for Appellant:

I. The action is for an accounting of the copartnership business of Marlette & Folsom. The pleadings and the evidence show that plaintiff and defendant entered into copartnership in the wood and logging business and general merchandising, at Incline, Washoe county, Nevada, in September, 1880, and continued in such copartnership and business until May 27, 1890, when the copartnership was dissolved. The partners were to share equally the profits, and bear equally the losses. There was no agreement or understanding as to who should manage the business; both gave it personal attention.

II. There was no agreement or understanding that either should be paid wages for services rendered the company. The partnership agreement makes no provision for wages.

III. The charges for services were entered on the books, but Marlette had no knowledge of such charges, or any claim for wages, till 1887, when he promptly denied the claim.

Marlette makes no charge or claim for compensation for his services.

IV.   For services rendered by the copartners in the business of the copartnership no compensation can be charged unless specially agreed upon.   Each partner owes it to the firm, as a duty incident to and resulting from the partnership agreement, to give his attention and services to the business of the firm.   (Parsons on Part., 4th ed., sec. 155, p. 200; *Hanks* v. *Barber*, 53 Ill. 292; 1 Johns. Ch. 157, 165; 7 Paige, 483, 493–4; 16 Ill. 37; *Legarie* v. *Peacock*, 109 Ill. 94, 102, 103; 118 Mass. 239; *McBride* v. *Stradley*, 103 Ind. 465; Lindley on· Part., vol. 1, 2d ed., p. 380; 34 Conn. 366; 19 Pa. St. 516; 41 Pa. St. 133; Story on Part., 7th ed., sec. 182, p. 304; Collyer on Part., sec. 183; *Heath* v. *Waters*, 42 Mich. 457–465; *Phillips* v. *Turner*, 2 Dev. & Bat. Eq. 123; *Cunliff* v. *Dyerville Co.*, 7 R. I. 325; *Burgess* v. *Badger*, 124 Ill. 288–301.)

V.   Folsom, for Marlette & Folsom, having trusted Valenzuela for merchandise, contrary to the express understanding that Valenzuela should not be trusted, except upon Captain Overton's promise to see this bill first paid, and a loss having been made, Folsom should be charged with the loss.   The law is well settled that where one partner sells the goods of the firm, contrary to the agreement, or against the objection, of the other partner, and a loss is made, the loss must be borne by the partner whose conduct occasioned the loss. (Fox's Digest of Part., p. 252; Parsons on Part., 4th ed., sec. 151; Story on Part., 7th ed., sec. 171; Lindley on Part., pp. 783–784, and cases cited; *Foster* v. *Goddard*, 1 Black, 510; *Bidwell* v. *Madison*, 10 Minn. 14; 6 N. J. Law, 434; 27 Ala. 245.)

VI.   In July, 1889, after the partnership was dissolved, Folsom took and appropriated to his separate use certain stock and other personal property of the firm.   Marlette consented to this appropriation, but the price was not agreed upon.   The property was charged to Folsom on the books of the company at $7,717 17; the charge was made at Folsom's instance by Ernest Folsom, his son.   In November, 1888, the stock and other property taken by plaintiff Folsom, not including the Yandell team, was inventoried and valued by E. B. Folsom and G. N. Folsom at $9,558 85, $1,841 68 more

than the price at which the same is charged in the books, and statement rendered.

VII. The court, in its decision, disregards the charge made by plaintiff against himself, and the statement made and rendered by him fixing the amount at $7,717 17, and debits plaintiff with $5,000 only, thus reducing the item $2,717 17 below the sum which plaintiff had charged himself with, and which he had rendered in a statement rendered and put in evidence in this case.

VIII. The plaintiff, having appropriated the stock, etc., fixed the price thereof, charged himself with it, and rendered an account of the amount and value to defendant, cannot, now that the stock has disappeared and can no longer be seen and valued, be permitted to question the price so fixed and accounted for by him.

IX. Plaintiff claims large sums of money for interest, both simple and compound, on money claimed to have been paid by him for the use and benefit of the company, and on balances claimed to be due him from the company, but interest is not·chargeable for balances due members of the copartnership unless expressly agreed to. (Parsons on Part., 156, 229; 8 Dana, 214; 24 Conn. 185; *Desha* v. *Smith*, 20 Ala. 747; 1 Lindley on Part., pp. 389–390, sec. 391, p. 925; *Moss* v. *McCall*, 75 Ill. 190; 80 Pa. St. 139; 39 Cal. 655; *Gillman* v. *Vaugh*, 44 Wis. 646; *Gage* v. *Parmalee*, 87 Ill. 330; *Brown Estate*, 11 Phil. 127; *McKay* v. *Overton*, 65 Tex. 82; *McCall* v. *Moss*, 112 Ill. 493; *Sweeney* v. *Neely*, 53 Mich. 421.)

X. There was no ascertainment of balance in this case, and no agreement to pay interest, either written or oral. For this reason the claim of interest should have been disallowed. (*Moss* v. *McCabe*, 75 Ill. 190; 89 Pa. St. 139; *Tyrrell* v. *Jones*, 39 Cal. 655; Lindley on Part., pp. 389–90.)

*Torreyson & Summerfield,* for Respondent:

I. If an agreement for wages can be implied from the course of dealing among partners, or from the nature of the services performed, the partner is entitled to compensation. (1 Lindley, sec. 380; *Mann* v. *Flanagan*, 9 Or. 429; *Cramer* v. *Bachman*, 68 Mo. 310; *Morris* v. *Griffin*, 49 N. W. 846; 3

S. W. 589; *Adams* v. *Warren*, 11 So. Rep. 754; 64 Wis. 118; 7 Paige, 483.)

II.   There is no established rule as to the allowance of interest between partners.   The circumstances of each particular case must determine.   (*Gyger's Appeal*, 62 Pa. St. 73; Parsons on Part., 4th ed., p. 203; *Morris* v. *Allen*, 14 N. J. Ch. Rep. 44; 1 Lindley, 389; *Beck* v. *Thompson*, 36 Pac. Rep. 562.)

III.   A partner is entitled to interest on moneys advanced by him to pay the debts due by the firm after its dissolution. (*Callander* v. *Phelan*, 79 N. Y. 369.)

IV.   The largest item in dispute between plaintiff and defendant is that referred to all through the testimony as " goods, second-hand tools, live stock, etc., taken from Incline to Hobart," by G. N. Folsom in the year 1889, which property belonged to the copartnership.   G. N. Folsom, plaintiff in this action, took said property, charged himself with the same in the sum of $7,717 17 on the books of Marlette & Folsom, and also credited Marlette & Folsom upon said copartnership books with the amount, he believing and considering this to be a fair and reasonable price for the property so taken.   The defendant, however, claims that this identical property was worth the sum of $4,664 36 more than the amount allowed for it by the plaintiff, and in his testimony states that he never agreed to accept this price, and that as yet no agreement has ever been arrived at between himself and plaintiff as to the value of this stock, second-hand tools, etc.

V.   If, as defendant testifies, he did not accept plaintiff's valuation, and there was no *aggregatio mentium* between plaintiff and defendant, then the true valuation would be what was the reasonable value of the property at the time it was taken by plaintiff from Incline to Hobart in the year 1889.

VI.   The plaintiff claims that the sum of $2,100 is due him as wages, compensation charged the company by him in the years 1885, 1887 and 1888.   The testimony in this case shows that there was no express agreement between the partners that plaintiff should receive compensation for his services in the management and control of the business, but the

testimony does show that there was an implied agreement that plaintiff should receive monthly compensation.

By the Court, BELKNAP, C. J.:

This is a suit for an accounting between partners, in which each demands a balance due from the other. The partnership was formed on the 29th day of September, 1880, and continued until the 27th day of May, 1890, when it was dissolved. Its business was that of contracting for the cutting of cord wood and logs, and the sawing of timber, to which the business of merchandising was subsequently added. They were equal partners. The district court ordered judgment in favor of respondent for the sum of $6,540 49. From the judgment and an order refusing a new trial, defendant has appealed.

The assignment of errors will be considered seriatim.

1. *Wells, Fargo & Co. Account:* Between February 24, 1885, and the month of October following checks aggregating the sum of $1,300 were drawn upon and paid by the banking house of Wells, Fargo & Co. of San Francisco, of which the books of the firm made no mention. Appellant contends that respondent is chargeable with this amount upon the theory that he drew the checks. Conceding, for the purpose of the case, that respondent drew the checks— although the district court expressly failed to find the fact—it does not follow that he is responsible to appellant for the amount. During the business season of each year the firm employed a bookkeeper, whose duty it was to correctly keep the books and accounts. This person was not the servant of the respondent only, but of the firm, and any errors or mistakes made by him were not chargeable to one member of the firm only, unless under special circumstances not existing here.

2. *Herbert Account:* In the month of August, 1889, appellant received the sum of $550 in part payment of an account against one Herbert. The amount was credited to the account, and cash debited on the journal and petty ledger. Appellant contends that respondent should be charged with the sum. The failure to properly charge these payments may be attributable to some innocent cause, as no suggestion

of improper conduct has been hinted at. Respondent, as before said, cannot be charged with mistakes which may have been made in bookkeeping.

3. *Valenzuela Account:* The firm sold goods to Valenzuela and sustained a loss of about $1,250 upon the account. It is claimed by appellant that Folsom agreed with Marlette that the goods should not be sold to the debtor without a guarantee of a third party for the payment of the account, and that afterwards the goods were sold without such guarantee, and a loss occurred in consequence. This contention is answered by the fact that the testimony is directly conflicting, and the district judge, by disallowing the claim, must impliedly have found in favor of respondent upon this point.

4. Respondent paid to the creditors of the firm, after it had discontinued business, a short time prior to its dissolution, the sum of $16,747 72. The district court allowed interest upon this sum amounting to the sum of $7,224 06. The money thus paid is properly treated as an advancement for the benefit of the firm. Lindley, in his work upon Partnership, says: "An advance by a partner to a firm is not treated as an increase of his capital, but rather as a loan, on which interest ought to be paid; and, by usage, interest is payable on money *bona fide* advanced by one partner for partnership purposes, at least when the advance is made with the knowledge of the other partners." (Vol. 1, p. 390.) The propriety of this charge admits of no question. The firm had no capital. It had been in the habit of paying interest at its banker's upon overdrafts for a long time. Appellant has not suggested in his testimony that this money was not advanced with his knowledge and acquiescence. Under these circumstances the charge of interest is equitable. (*Baker* v. *Mayo,* 129 Mass. 517; *Morris* v. *Allen,* 14 N. J. Cl. 44; *Berry* v. *Folkes,* 60 Mass. 576; *Collender* v. *Phelan,* 79 N. Y. 366.)

5. On or about the 29th day of July, 1889, respondent, with consent of appellant, appropriated certain personal property belonging to the firm to his own use, charging himself therefor with the sum of $7,717 17 upon the books of the firm. There had been no agreement touching the valuation to be fixed on the property, and, upon the trial, under the

terms of a stipulation filed in the case by counsel, appellant objected to the price so fixed by respondent. This stipulation, among other things, provided "that a transcription of the firm books, that had been introduced in evidence, should be treated as a correct transcription, and as to all items and all balances appearing in said transcription, opposite to which is a red cross, such items and balances are disputed by defendant, S. H. Marlette." Accordingly, appellant, Marlette, did cause an "X" in red ink to be set opposite this item, thus indicating that he contested the valuation placed upon the property by the respondent, Folsom. Evidence was introduced touching the value of the property, and the fact was also shown that respondent had charged himself with $7,717 17 for it. Upon all of the testimony introduced the court found as a fact that the value of the property was $5,000, and charged the respondent with that sum in the adjustment of the accounts. Appellant claims that respondent should be concluded by the value fixed by himself upon the books of the firm, and therefore respondent should have been charged with $2,717 17 more than the value fixed by the findings. It must be stated, as a matter of fact, that there was no objection to the introduction of testimony tending to establish a lower valuation than the charge made by the respondent. Appellant must have expected that the district court would have placed a greater valuation than that which the respondent had charged himself, otherwise there was no reason for the objection being taken. When the contest upon the charge was inaugurated by the appellant, under the peculiar circumstances of the case, the question of the value of the property was reopened, and respondent had the right to establish a lesser value as the appellant to establish a greater value. He took the risk and must abide the result. As the respondent has been allowed interest upon the advance he made for the benefit of the firm, it is only equitable that the appellant should be allowed interest upon the value of this property, fixed at $5,000, from the date of its appropriation by respondent.

6. *Wages:* Appellant absented himself from the locality where the firm operated a considerable portion of the time. Respondent charged him for his services for a portion of the

time.  The first item of this nature was charged during the winter of 1882–3, and amounted to the sum of $300.  No contention is made touching this charge.  During the year 1885, $1,050 was charged.  The court allowed this charge, after having deducted the charge for wages during the month of July of that year.  The general rule undoubtedly is that one partner is not entitled to charge the other compensation for his sevices without special agreement.  There was no special agreement in this case, and the majority of the court are in favor of the enforcement of this rule.  One member of the court, however, dissents from this view, holding that as these charges were made during the course of business, that as the books were accessible to appellant, and that a statement containing these charges was delivered to him upwards of two years prior to the dissolution of the firm, and no objection having been made then, or afterwards, until this proceeding was commenced, he should be deemed to have acquiesced in the charge.  The charge will be stricken out.

The case will be remanded to the district court, with instructions to modify its judgment by disallowing respondent the $1,050 allowed as wages, and to allow him simple interest at the rate of 7 per cent per annum, instead of 10 per cent per annum, upon the advances made by him after they had ceased to do business together, and also allow appellant the same interest on the $5,000, the value of the property, from July 29, 1889.  Under the circumstances of the case, the costs in the district court should not be allowed respondent; and that court will also correct its judgment by ordering each party to pay his own costs; the judgment, as corrected, to bear legal interest from date of original entry.

The judgment thus modified and corrected is affirmed; each party to pay his own costs upon this appeal.