CORNELL ET AL. *v.* SAGOUSPE ET AL.

No. 2896

February 4, 1931.                    295 P. 443.

*Clyde D. Souter,* for Appellants:

*W. S. McGuire* and *Samuel R. Tippett,* for Respondents:

## OPINION

By the Court, SANDERS, J.:

This suit was brought on November 23, 1926, by E. B. Cornell against J. P. Sagouspe for an accounting, settlement, and dissolution of a farming and livestock partnership conducted and carried on by the parties under the firm name of Cornell & Sagouspe. According to the complaint in the case, the partnership was formed under an oral contract on or about March 1, 1916, which was reduced to writing on December 11, 1917. The partnership property consists of about 1,000 acres of land called the Heppner ranch, together with the live stock and other personal property thereon, near Fallon, in Churchill County, Nevada. The firm business was carried on in harmony until September, 1926, when the partnership relation became strained. The friction occasioned by their differences resulted in the commencement of this suit in the following November. While the suit was pending, on, to wit, February 8, 1927, the partners

and their wives entered into a stipulation and agreement, filed in the cause, which forms the basis for the plaintiff's appeal from the judgment and from an order denying his motion for a new trial. The agreement incorporated in the court's findings and judgment reads in part as follows:

"It is hereby stipulated and agreed by and between J. P. Sagouspe and Julie Sagouspe, Edith M. Cornell and E. B. Cornell as follows:

"That J. P. Sagouspe and Julie A. Sagouspe agree to buy from E. B. Cornell the partnership property known as the Heppner Ranch for Twenty Thousand Dollars ($20,000.00), payable Five Thousand Dollars ($5,000.00) in cash within thirty days time, balance to be secured by second mortgage on the ranch real estate, bearing interest at the rate of six per cent per annum, payable annually, and payable in installments of Five Thousand Dollars ($5,000.00) annually, beginning at the end of the third year; said mortgage to provide that whenever default shall occur in the payment of any interest or principal when due, and the same shall continue for thirty days, the holder may declare the entire unpaid balance to be immediately due and payable.

"It is understood and agreed that the said mortgage shall be subject to no other lien whatsoever, except a first mortgage to be secured from the Federal Farm Loan Bank of not to exceed thirty-five thousand dollars ($35,000.00), or if secured elsewhere not to exceed thirty thousand dollars ($30,000.00). This proposition shall be subject to a partnership accounting in this action, and the sum of fifteen thousand dollars ($15,000.00) as agreed to be secured by second mortgage hereinbefore mentioned shall be increased or diminished by the amount of difference that such accounting shall establish between the relative interests of the partners in said property. Each partner to pay one-half of the cost of such accounting, to be had under the order of the court."

Upon the acceptance by the Cornells of the offer, terms, and conditions of said agreement, the court made an order appointing one F. A. Sawyer as referee

to make the accounting, as provided in the agreement.

On exceptions filed by both parties to the referee's accounting and report, referred to as his findings and conclusions, it was adjudged and ordered, among other things, that the mortgage to be given by the Sagouspes to the Cornells, as provided in said agreement, be reduced from $15,000 to that of $2,797.84. The principal controversy on appeal arises from the reduction of the mortgage instead of its increase. The appeal is limited to the discussion of the items of the accounting which went to the reduction of the mortgage. One item is designated in the assignments of error as the "Hesse Sheep" item, and the other is designated "Wages Allowed Sagouspes."

In the accounting Cornell was allowed a credit of $10,000 for the so-called "Hesse Sheep" which was reduced by the court in its findings to that of $9,378, and in addition to the reduction Sagouspe was allowed a credit of $211 as interest on $622, from October 16, 1922, to February 8, 1927, the difference between $10,000 and $9,378. The reduction of the credit and the allowance of interest is assigned as error.

In the accounting Sagouspe was allowed as wage compensation for his services rendered the partnership, from March 1, 1916, to April 25, 1925, a period of 9 years, 1⅚ months, the sum of $16,475, and his wife was allowed as wage compensation for her services rendered the partnership, covering the same period of time, the sum of $8,237.50, and Cornell and wife were allowed the combined sum of $3,522.50. Upon the hearing of the exceptions to the several allowances the amounts allowed the Sagouspes were permitted to stand, and the allowance made the Cornells was stricken out. The allowance of wages to the Sagouspes, regardless of the amounts, is assigned as error.

■ Wages allowed Mr. Sagouspe—$16,475. The general rule undoubtedly is that one partner is not entitled to charge the other compensation for his services without special agreement. Folsom v. Marlette, 23 Nev. 459, 49 P. 39; 1 C. J. 786, sec. 230. In other words, the law

presumes that the absence of an agreement for compensation necessarily implies that each partner relies upon the profit arising from the business and his partnership interest therein for his compensation. 1 Rowley, Modern Law of Partnership, sec. 350, p. 402. The general rule, however, according to many decisions, is not inflexible, nor of universal application. Where it can be fairly and justly implied from the conduct of the partners and the course of dealing between the partners, or from circumstances of equivalent force, that one partner is to be compensated for his services, his claim will be sustained. 1 Rowley, sec. 354; 47 C. J. 788. There was no express agreement in this case for compensation of either partner. The inquiry is whether the evidence is sufficient to warrant the implied conclusion of the court that there was an agreement or understanding between the partners that Sagouspe was to be compensated for his services rendered the partnership. According to the court's decision and findings, Sagouspe was allowed compensation for his services solely upon the ground that, from the beginning of the partnership in 1916, Sagouspe lived at the place of business and devoted himself with fidelity and energy to all his duties, and by his efforts the partnership was made to pay its own way, while his copartner, Cornell, devoted but little or no time or effort to the partnership property or its business, and, under these circumstances, there was an implied agreement to compensate Sagouspe for his services. In the absence of agreement, compensation will not follow merely because one partner renders more service in connection with the firm's business than the other. Gilmore on Partnership, sec. 133; 1 Rowley, Modern Law of Partnership, sec. 351; 47 C. J. 786, sec. 230.

■ It was easy enough for the partners to have provided for such contingency in the express contract entered into on December 11, 1917, if such was their intention. Conceding that Sagouspe did render more service in connection with the partnership land than Cornell, we think that he should not have been compensated for his services in the absence of more satisfactory evidence of an agreement than the mere fact that

Sagouspe had full charge of the affairs of the partnership, while Cornell divided his attention between his individual business and that of the partnership. The law never undertakes to settle between partners their various and unequal services in the transaction of their private affairs, for the reason that the attempt would be altogether impracticable. Caldwell v. Leiber, 7 Paige (N. Y.) 483; Rowley on Modern Law of Partnership, sec. 351. In regard to the services rendered by the partner Cornell to the partnership, the court's referee found that the continuous efforts toward the success of the partnership from its earliest inception entitled Cornell to at least the amount awarded him for his services. Furthermore, the accounting and the proof shows that Cornell rendered very valuable services to the partnership, without interruption, through a long series of years, and that he contributed to the partnership money and property of the value of $19,000.

It is clear to us that both partners rendered services in connection with the partnership enterprise. All that is said in the briefs concerning the services rendered by Sagouspe may be conceded, and yet it does not support the implied conclusion of the court and its referee that there was an understanding or agreement to compensate Sagouspe for his services. If it was intended that either partner should have a valid claim for compensation, it is natural to suppose that it would have been mentioned at the time the verbal agreement of partnership was reduced to an express contract, whereby each became equal partners in both the real and personal property of the firm. Sagouspe not only did not prefer any such claim as he now asserts, at that time, but on the contrary it does appear that he never intimated his purpose to do so during the existence of the partnership, and it was not until differences had arisen between them in the year 1926, that he made any claim for compensation. It was in proof that Sagouspe had charge of the books of the firm, kept by his wife, and that he never, during all the various years of his supervision of the firm business, put upon record any charge

for his services, or even a line or word to that effect. It was in proof that during each year of the partnership Cornell made up from the books of the concern, as kept by Mrs. Sagouspe, the federal income tax reports of the partnership, and that in no report was there a charge against liability for an income tax for wages paid either of the partners or their wives. We think that if it was the intention of either partner to insist upon compensation, good faith required that he should have made it known, and it is natural to suppose that, if such was the fact, the claim would have been charged against liability for an income tax. It was also in proof that during the existence of the partnership Sagouspe was credited with $15,000 of cash withdrawals which he invested for his own use and benefit in certain lands located in the vicinity of the Heppner ranch, known as section 31, or railroad land, to which he divided his time and attention. Not a single item of the withdrawals was charged on the books as wage compensation to Sagouspe and his wife. It was in proof that it was not until a few months before the institution of this suit that Cornell had any knowledge of the claims for wages allowed the Sagouspes. No sooner was this information obtained than Cornell instituted this suit for a true accounting and dissolution of the firm. Under all these circumstances, we think there is nothing in this case to take it out of the operation of the general rule which denies compensation to a partner for his services unless under a special agreement. In other words, the legal presumption is that Sagouspe relied upon the profits arising from the business and his partnership interest therein for his compensation.

■ The cases reviewed by counsel for Sagouspe in their briefs, where, in the absence of an agreement for compensation, one was implied, may be differentiated from this case, in that Sagouspe did not devote his time and attention to the business of the firm at the instance of Cornell, while Cornell devoted his attention to his individual business. It is true that the partnership only embraced the purchase and running of a farm, but it

was carried on and conducted by both partners as if it were a commercial partnership. In the written agreement of partnership it was provided that each partner should, from time to time, withdraw amount or amounts from the firm to make them appear equal on the books. Such an agreement indicates that neither partner was to have a right to claim compensation for his services. 47 C. J. 788.

■ Wages allowed Mrs. Sagouspe — $8,237.50. In explanation of this item, the referee stated in his report that Mrs. Sagouspe was allowed wages, because, on ranches of the character of the Heppner ranch it was customary to employ cooks, and, Mrs. Sagouspe having willingly cooked for the partnership, both the court and the referee concluded that she, as any other employee, should be paid for her work.

Mrs. Sagouspe, as a witness before the referee, testified, in substance, that, in the early spring of 1920, she had a conversation with her husband in which it was understood and agreed that she should receive wages as cook for the partnership, and that at that time her husband offered her the firm's note for wages then due, but that she did not accept the note and told her husband that she was willing to do the cooking and whatever sum she was allowed as wages might be invested by him for their common use and benefit. She testified that her wages were included in the cash withdrawals made by her husband from the firm business, and invested by him in the land designated in the record as section 31, or railroad land. She testified that at the time of the accounting the partnership was not indebted to her in any sum for her services. Assuming that Mrs. Sagouspe was entitled to wages, without so deciding, she had been compensated for her services at the time this suit was instituted, if the railroad land purchased, as testified to, did not become partnership property.

■ Hesse sheep item—$10,000. On the side of Cornell it was in proof that he accumulated and purchased for the partnership 1,648 sheep, which number, less 14, reached the Heppner ranch in August, 1921; that 1,563

of the sheep were purchased by Cornell from one Hesse, at $6 per head, which totaled $9,378; that the remaining number of sheep were purchased from other parties by Cornell. It developed, however, in the course of the examination of Cornell, that on October 16, 1922, a firm note was given Cornell in the sum of $10,000 for the sheep, which was hypothecated by Cornell to a bank in Porterville, California, for his own account, in no way connected with the sheep transaction. It developed that no money passed for the "Hesse Sheep" and that Cornell conveyed, in exchange for the sheep, a two-third interest in certain of his lands located in California. The referee found that, while there was no evidence as to the value of the interest in the land given in exchange for the sheep, he believed that Cornell realized at least $1,000 more for his land than he would have realized from a cash sale, but, for lack of evidence as to the value of the land, he was compelled to allow a credit of $10,000 to Cornell for the sheep, as much as he hated to do so. The court, however, in an effort to adjust the differences in the testimony of Cornell and Sagouspe as to the sheep transaction, and on account of its misgivings as to the bona fides of Cornell in his dealings with the partnership respecting the "Hesse Sheep," reduced the credit of $10,000 allowed Cornell to $9,378, upon the theory that there was a partial failure of consideration in the firm note for $10,000 given Cornell for the sheep. In the absence of proof as to the value of the land given in exchange for the "Hesse Sheep," nothing short of a breach of good faith, amounting to fraud, would justify the reduction of the credit of $10,000 allowed Cornell by the referee. In the absence of such evidence, we conclude that the credit should stand.

The judgment is reversed.

## ON PETITION FOR REHEARING

April 13, 1931.

*Per Curiam:*

Rehearing denied.